1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| JOSELUIS MORALES, | Case No. 1:13-cv-00591 DLB PC |
| Plaintiff, | |
| v. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
| KAREN CRIBBS, et al., | |
| Defendants. | |

17          Plaintiff Joseluis Morales ("Plaintiff") is a state prisoner proceeding pro se and in forma

18    pauperis in this civil rights action.  Plaintiff filed this action on March 8, 2013, in the United States

19    District Court for the Northern District of California.  The action was transferred to this Court on

20    April 24, 2013.

21          On January 10, 2014, pursuant to Court order, Plaintiff filed a First Amended Complaint

22    ("FAC").  He names Appeals Coordinators Karen Cribbs, N. Pana, E. Henry and S. Tallerico, and

23    California Department of Corrections and Rehabilitations ("CDCR") director Matthew Cate as

24    Defendants.[1]

25
26
27
28

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on May 28, 2013.

**A.**      **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Kern Valley State Prison ("KVSP").

Plaintiff is serving a 29-years-to-life sentence based on a plea deal entered when he was a minor, though tried as an adult.  Plaintiff believes that he received ineffective assistance of counsel during his trial.

Plaintiff was placed in custody in December 1999.  After not hearing from counsel regarding his appeal, Plaintiff began attempting to perform legal research while housed at the Los Angeles County State Prison.

Plaintiff was transferred to Salinas Valley State Prison in August 2001.  In April 2003, he was given physical access to the law library, but could only use the Penal Code.

In December 2003, Plaintiff was transferred to the Secured Housing Unit at Pelican Bay State Prison.  He had to use a paging system to access legal materials and could only access the law library if he had a 30 day court deadline.  If he had a deadline, Plaintiff would have access to the law library for two hours per week.  However, if he chose to have physical access to the law library, he would forfeit the paging system for two weeks.  Plaintiff did not have "free range" to the law library books and would have to give a citation to view any law books.

In March 2005, Plaintiff was released back into the general population.  If Plaintiff did not have a 30 day deadline, he was only allowed physical access to the law library once a month.  There were no legally trained personnel or inmates to assist Plaintiff.

In 2007, prison officials introduced a pilot program using computers for research.  As early as April 2007, Plaintiff was given access for two hours sessions, but he would forfeit the paging system for two weeks.

In October 2008, Plaintiff received information from the Human Rights Watch regarding a treaty that applied to him, based on his trial as an adult for a juvenile offense.  Plaintiff tried to research the treaty, but there were no treaty publications in the law library.  He filed a state habeas action immediately to raise the issue.  The petition was denied.

Plaintiff then filed his habeas petition in federal court.  Plaintiff states that he was time-barred, and cert was denied on March 19, 2012.  During the period that Plaintiff was litigating his

federal habeas petition, he was on lockdown from October 2008 to October 2010.  Until September 2012, Plaintiff only had access to the paging system and could not access the inmate computer.

Within 30 days of the time-barred denial on the treaty issue, Plaintiff filed an inmate appeal, alleging that he was actually injured by the denial of access to the courts.  On April 16, 2012, Defendant Cribbs screened out Plaintiff's appeal for failure to state specific facts or specify the act being appealed.  Defendant Cribbs cited section 3084.6(b)(6)[2] of the California Code of Regulations.

On April 16, 2012, Plaintiff filed an objection to the screen-out, noting that the cited section related to time-limits for responding to appeals.  Plaintiff also explained that section 3084.2(a) only required that he describe the problem, and considering the amount of space provided, Defendant Cribbs should not require more.  Finally, Plaintiff "warned" Defendant Cribbs that she could be held liable for denying him access to the courts if she continued to screen out his appeals.

On May 3, 2012, John Doe screened out the appeal because Plaintiff failed to show that he attempted to resolve the issue at the informal level.  Plaintiff objected to the screen-out, pointing out that section 3084.5(a)(3)(D), permits Plaintiff to bypass the informal level when the appeal is based on a regulation or policy.  Plaintiff also warned that he would take legal action if his appeal was not processed properly.

On May 18, 2012, Defendant Pana screened out the appeal because Plaintiff failed to exhaust at the informal level.

On May 30, 2012, Plaintiff filed for an informal response.  On June 13, 2012, the law library supervisor confirmed that the library did not have the treaty publications.

On June 14, 2012, Plaintiff filed a renewed appeal, attaching the initial appeal and the informal response.  Plaintiff explained the situation and requested a second level review pursuant to section 3084.7(a)(1) and (2).  Defendant Henry screened out the appeal on June 28, 2012, stating that the appeal was not received until June 22, 2012, and was therefore time-barred.  Defendant Henry explained that the prior appeal was returned to Plaintiff on May 18, 2012, and he had 30 days to appeal the cancellation.  Plaintiff objected to the screen-out, contending that he filed the appeal the next day after he received an informal response and had no control over the institutional mail.

---

[2] Plaintiff notes that some sections may have since been amended and the numbering may have changed.

On July 6, 2012, Defendant Henry cancelled the renewed appeal and notified Plaintiff that he was misusing or abusing the appeals process, and that if he resubmitted the appeal, he would be placed on restriction.

On December 17, 2012, Plaintiff filed for leave to file a second federal habeas petition to raise an actual innocence claim.  The Court of Appeals denied the application on January 25, 2013, ruling that Plaintiff did not make a prima facie showing under section 28 U.S.C. § 2244(b)(2).  Plaintiff contends that the research to put together the second habeas petition took years because, for the most part, Plaintiff had to use the paging system to access the courts.

On February 10, 2013, Plaintiff filed an appeal to raise a second actual injury to his access to courts following the Ninth Circuit's time-barred denial.  The appeal contended that Plaintiff was impeded and hindered from filing sooner because he was not given full access to a ready law library and could only use a paging system for research.

On February 25, 2013, Defendant Tallerico screened out the appeal and cancelled it as a duplicate.  Plaintiff objected on February 28, 2013, citing section 3084.6(b)(8) and asking for second level review.  On March 11, 2013, Defendant Tallerico warned Plaintiff that he would be placed on restriction if he resubmitted the appeal.  Defendant Tallerico did not address Plaintiff's objections.

As to Defendant Cate, Plaintiff contends that he was aware of the injunction issued against CDCR in Gilmore v. Lynch.  Plaintiff alleges that in 2009, Defendant Cate "promulgated the regulations to amend the prison law library mandated materials to meet the federal constitutional requirements for access to the courts."  FAC 8.

Plaintiff alleges that he is now housed at KVSP, where he has the same problems.  He has filed another inmate grievance for having less than an hour for research, no paging system, no copies of transcripts and no law library personnel when staff members are on vacation.  Plaintiff contends that there are no penological interests to negate access.

Based on these facts, Plaintiff contends that (1) Defendants Cate and Doe (the subsequent director of CDCR) were responsible under court order and state statute to ensure that Plaintiff had adequate access to prison law libraries; (2) Defendants Cate and Doe breached their fiduciary duty to protect Plaintiff form an actual injury to his access to the courts; (3) Defendants Cribbs, Pana and

1  Henry conspired to retaliate against Plaintiff for filing grievances; and (4) Defendant Tallerico

2  retaliated against him by improperly cancelling his appeal.

3  **C.    DISCUSSION**

4       1.    Access to Courts

5       Under the First and Fourteenth Amendments, Plaintiff has a constitutional right of access to

6  the courts and prison officials may not actively interfere with his right to litigate.  Silva v. Di

7  Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011).  This means that the state is prohibited from

8  "erect[ing] barriers that impede the right of access of incarcerated persons."  Id. at 1102 (citations

9  omitted).  However, to state a viable claim for relief, Plaintiff must allege he suffered an actual

10  injury, which is actual prejudice with respect to contemplated or existing litigation.  Nevada Dep't of

11  Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis v. Casey, 518 U.S. 343, 348, 116

12  S.Ct. 2174 (1996)) (quotation marks omitted), cert. denied, 132 S.Ct. 1823 (2012).  Actual injury

13  includes the "inability to meet a filing deadline or to present a claim."  Nevada Dep't of Corr., 648

14  F.3d at 1018 (citing Lewis, 518 U.S. at 348).

15       Plaintiff's access to courts claim against Defendants Cate and Doe is based on his contention

16  that inadequacies in the law library and/or the method of accessing the law library resulted in two

17  actual injuries:  (1) the denial of his federal habeas petition related to the treaty as time barred; and

18  (2) the denial of his actual innocence federal habeas petition.  He believes that he was unable to

19  timely discover the treaty, which existed in 1995, because the law library did not have any treaty

20  publications.  He also believes that he was unable to discover that there was evidence of his actual

21  innocence because the prison law library did not give him adequate access to "figure out facts were

22  actionable and which law theory..."  FAC 9.

23       To state a claim for violation of access to the courts, Plaintiff must show that Defendants'

24  alleged actions were the proximate cause of his actual prejudice.  Silva, 658 F.3d at 1103-04

25  (emphasis added).  As to his treaty claim, Plaintiff basically contends that because the prison law

26  library did not have treaty publications, he was unable to timely discover his claim.  However, it

27  does not follow that the law library's lack of treaty publications was the proximate cause of the

28  denial of Plaintiff's habeas action as time-barred.

6

1     Plaintiff has been incarcerated since 1999.  He states that he learned of the treaty issue in

2  October 2008, and tried to research it before immediately filing a state habeas petition.  Plaintiff

3  filed a federal habeas action in June 2009 and it was denied as time-barred in July 2011.[3]  There

4  cannot be a finding of proximate cause when, for the first nine years of Plaintiff's incarceration, the

5  law library did not have materials on a claim that he did not know existed.  Indeed, as the Central

6  District of California explained in the February 9, 2010, Report and Recommendation to deny his

7  petition:

8
          Here, Petitioner claims that the "factual predicate" for his claim was the Treaty and that he
9         did not know of this Treaty existence until 2008.  However, this does not support a claim for
          tolling under §2244(d)(1)(D).  The Treaty was in existence in 1995, prior to Petitioner
10        entering into a plea agreement.  Thus, the Treaty could have been discovered earlier by
          Petitioner through the use of reasonable diligence.
11
   Morales v. Horel, 5:09-cv-01109-SVW-VBK , ECF No. 12 (C.D.Cal. 2010).
12
13    Turning to Plaintiff's petition relating to actual innocence, his contends that the prison law

14 library did not give him adequate access to "figure out facts were actionable and which law

15 theory..."  Plaintiff also argues that the paging system was insufficient.  He contends that these

16 inadequacies resulted in his inability to present an actual innocence claim.  However, Plaintiff is

17 again trying to link a general deficiency to a specific result.

18    Plaintiff's complaints related to the law library involve either the frequently and length of his

19 law library visits, the method by which he needed to access the law library, or general deficiencies in

20 the law library.  Insofar as he believes that these alleged law library deficiencies, alone, violate his

21 right of access to the courts, he is mistaken.  Inmates do not have the right to a law library or legal

22 assistance.  Lewis, 518 U.S. at 351.  Law libraries and legal assistance programs are only the means

23 of ensuring access to the courts.  Id.  Because inmates do not have "an abstract, freestanding right to

24 a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that

25 his prison's law library or legal assistance program is subpar in some theoretical sense."  Id.;

26 Blaisdell v. Frappiea, 729 F.3d 1237, 1244 (9th Cir. 2013).

27    Plaintiff therefore fails to state a claim for violation of access to the courts.

28
   _____
   [3] Plaintiff cites to the federal habeas action in his FAC.  The Court may take judicial notice of court records in other
   cases.  United States v. Howard, 381 F.3d 873, 876 n. 1 (9th Cir. 2004).

2.      Defendants Cate and Doe

In addition to failing to allege sufficient facts to state an access to courts claim, Plaintiff has not alleged a sufficient link between Defendants Cate and Doe and the alleged deficiencies.

Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and as administrators, Defendant Cate and Doe may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Some culpable action or inaction must be attributable to Defendants, and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation.  Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

In his FAC, Plaintiff alleges that Defendants Cate and Doe were personally responsible "under court order and state statute" to ensure that inmates such as Plaintiff had adequate access to prison law libraries.  FAC 9.  Plaintiff cites Gilmore v. Lynch, 319 F.Supp. 105 (D.C. Cal. 1970) as creating some kind of duty that Defendants Cate and Doe breached by the above deficiencies.  Gilmore involved a challenge to CDC regulations "restricting access to law books, legal materials, and lay assistance in preparing filings."  Gilmore v. People, 220 F.3d 987, 992 (9th Cir.2000).  In 1972, the court approved regulations proposed by CDC offering a more comprehensive list of materials and ordered their adoption.  Gilmore, 220 F.3d at 994.  In 1997, CDC officials sought to terminate the 1972 order.  Id. at 994–95.

8

1    Gilmore was decided long before Lewis v. Casey, and the continued viability of the order in

2    Gilmore was one of the issues that was remanded to the district court to consider.  Gilmore v.

3    People, 220 F.3d at 1008-10.  Regardless, "remedial orders ... do not create 'rights, privileges or

4    immunities secured by the Constitution and the laws' of the United States."  Hart v. Cambra, 1997

5    WL 564059, *5 (N.D.Cal. 1997) (quoting Green v. McKaskle, 788 F.2d 1116, 1123-24 (5th

6    Cir.1986).

7    Plaintiff therefore fails to show that Defendants Cate and Doe "participated in or directed the

8    violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d

9    1040, 1045 (9th Cir. 1989), and he cannot state a claim against them.

10    4.    Retaliation

11    Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition

12    the government may support a section 1983 claim.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th

13    Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v.

14    Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

15    Prisoner have a protected right to file prison grievances.  Watison v. Carter, 668 F.3d 1108, 1114

16    (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

17    "Within the prison context, a viable claim of First Amendment retaliation entails five basic

18    elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because

19    of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

20    First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

21    goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison; Silva, 658 at

22    1104; Brodheim, 584 F.3d at 1269.

23    a.    *Defendants Cribbs, Pana and Henry*

24    Plaintiff alleges that Defendants Cribbs, Pana and Henry retaliated against him by

25    inappropriately screening-out or denying his administrative appeals.  He contends that he was

26    retaliated against for his prior appeal relating to his access to courts claim.  Plaintiff also alleges that

27    the threat of appeal restriction had a chilling effect.

28

9

1   However, Plaintiff fails to state sufficient facts to connect the alleged improper decisions to

2   his appeal related to the treaty issue.  A retaliation claim requires Plaintiff to show that the adverse

3   actions were taken because of his protected conduct.  Plaintiff contends that their actions "are

4   circumstantial evidence inferred by the continued screen outs that each took part in when the

5   grievance was to be processed at the second level and they found an excuse to screen out the

6   grievance..." FAC 13.

7   In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the

8   light most favorable to him, presents a genuine issue of material fact as to" Defendant's motivation.

9   Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal

10   quotation marks omitted).  This requires Plaintiff to offer either direct evidence of retaliatory motive

11   or at least one of three general types of circumstantial evidence: (1) proximity in time between the

12   protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other

13   evidence that the reasons proffered by Defendant for the adverse action were false and pretextual.

14   McCollum v. Cal. Dep't Corr. and Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon,

15   283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

16   Here, Plaintiff's circumstantial evidence consists simply of the fact that Defendants Cribbs,

17   Pana and Henry denied his appeals for what he believes to be improper reasons.  While the denials

18   may be been close in time to his original appeal, the Court will not, without more, find

19   circumstantial evidence of retaliatory motive.  Plaintiff theorizes that because the appeals were

20   improperly screened out, the motivation must have been the filing of his appeal related to the treaty

21   publications.  This is an insufficient connection.

22   The Court also notes that although Plaintiff may disagree with the appeal decisions, it does

23   not necessarily mean that the decisions were either improper or made in bad faith.  Even assuming

24   that the appeal decisions were incorrect, as Plaintiff alleges, it does not follow that Defendants had a

25   retaliatory motive in issuing those decisions.

26   Moreover, as he did in his original complaint, Plaintiff alleges retaliation only in the context

27   of a conspiracy.  To state a claim for conspiracy under section 1983, Plaintiff must show the

28   existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual

10

1  deprivation of those constitutional rights.  Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010);

2  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001).

3         Plaintiff alleges that the "agreement established by the circumstantial evidence shows" that

4  Defendants Henry, Cribbs and Pana intended to violate Plaintiff's right to access the prison

5  grievance system, or impeded his access to the courts.  Plaintiff again fails to allege any facts

6  showing the existence of an agreement or meeting of the minds amongst Defendants Cribbs, Pana

7  and Henry.  In fact, Plaintiff states that Defendants had an objective "even if they all did not know

8  the exact details..."  FAC 13.

9         He therefore fails to state a conspiracy claim against them.

10                b.    *Defendant Tallerico*

11         Plaintiff's claim of retaliation against Defendant Tallerico is based on his belief that

12  Defendant Tallerico cancelled Plaintiff's appeal related to his actual innocence claim in retaliation

13  for filing the grievance.  However, as with the other Defendants, Plaintiff presents only his

14  conclusory belief that because the reason behind the cancellation was improper, Defendant Tallerico

15  must be acting with retaliatory intent.  For the reasons explained above, this is insufficient to state a

16  retaliation claim.

17         5.    State Law Claims

18         To the extent that Plaintiff contends that Defendants Cate and Doe are liable under California

19  Government Code section 815.6, he is incorrect.

20         Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

21  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action

22  within such original jurisdiction that they form part of the same case or controversy under Article

23  III," except as provided in subsections (b) and (c).

24         First and foremost, as discussed throughout this order, Plaintiff has not stated any federal

25  claims over which this Court has original jurisdiction.  This precludes the Court from hearing a state

26  law claim.

27         Second, section 815.6 does not create a claim under these facts.  "Where a public entity is

28  under a mandatory duty imposed by an enactment that is designed to protect against the risk of a

11

particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov't Code § 815.6. First, "the enactment at issue [must] be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken." Haggis v. City of Los Angeles, 993 P.2d 983, 987 (Cal. 2000) (emphasis in original). Second, "the mandatory duty [must] be 'designed' to protect against the particular kind of injury the plaintiff suffered." Id. "The plaintiff must show the injury he suffered is one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." Id. "Section 815.6, not the predicate enactment, creates the private right of action." Id. at 988 (emphasis in original omitted).

Plaintiff appears to rely on Title 15, section 3124 of the California Code of Regulations as the apparent source of the mandatory duty. This section sets out the materials that each prison law library must maintain. It does not, however, create any type of statutory duty to which section 815.6 would provide a right of action.

Plaintiff has failed to allege a statutory duty that exists and therefore has failed to state a cognizable claim.

**D.    <u>CONCLUSION AND ORDER</u>**

Plaintiff's complaint fails to state a claim upon which relief may be granted under section 1983. Plaintiff was given an opportunity to correct the deficiencies in his original complaint, but he has failed to do so. The Court does not find that further opportunities to amend are warranted. The additional allegations in the FAC do not suggest that Plaintiff can cure the deficiencies with another amendment. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

1       Accordingly, Plaintiff's FAC is DISMISSED WITHOUT LEAVE TO AMEND for failure to

2  state a claim for which relief can be granted.

3       This terminates this action in its entirety.

4

5  IT IS SO ORDERED.

6   Dated:   __May 22, 2014__               /s/ Dennis L. Beck

7                                       UNITED STATES MAGISTRATE JUDGE